May it please the Court, Champerty rears its ancient head. These are the words of this Court forty years ago when it decided the Balboa insurance case. Balboa relied on the Martin case. Those are the latest two cases involving Champerty. Six points flow from that. Martin held Champerty is an extremely ancient, little-used doctrine whose scope has been constricted in the past century. That was true until the broad and liberal interpretation by the District Court in this case. It should be little-used and constricted now in the forty years that have passed. Champerty's agreement is one where a person with no interest in a case buys an interest, pays to prosecute the case, and controls the prosecution. That's not the case here. And all that the Court has to do is to examine what went on in the bankruptcy court from the motion to approve the settlement, the settlement agreement, and the Court's order approving that settlement, to realize that what we had here was a situation where the Crabtrees didn't have enough money to purchase, to pay for the $10,000, so they had to get funding. But they paid separate consideration. They gave up all of the objections that they had to Mr. Cotton's second bankruptcy, and they said, we will give up our right and be subordinated to all the other claims in the bankruptcy. What was it that Court Properties, in fact, did? It lent them $10,000 and then walked away. And it lent them $10,000 on a note that said, you go ahead and prosecute the case, and if, as and when, you collect more than $10,000, more than $100,000, you can pay us back $10,000 plus 8% interest. That's not Champerty. So there was no inducement or stirring up of litigation, I guess, as part of it? Absolutely not. And, Your Honor, we cited that Florida case that I think is really the best case, the Kraft case, on what is stirring up litigation and officious intermeddling. Well, Court Properties didn't instigate the litigation. They didn't meddle. Crabtree sought out the loan because they were broke after Mr. Crabtree suffered this TBI and terrible physical injuries and couldn't work. Court Properties didn't impose its views, and Court Properties allowed the Crabtrees to craft the terms of the note and the repayment. It's also significant that the Court specifically approved, and the trustee in the bankruptcy specifically approved, that all Court Properties was is Crabtree's designee. That is, he was designated to pay the $10,000 to get the assignment, together with what the Crabtrees paid, and then turn it over to the Crabtrees. That was the whole purpose of it. Third, Balboa and Martin hold that a Champerty's agreement must involve officious intermeddling. Well, that's not true, as we've just described with the Kraft case. The Court in Martin ruled that there is a distinction, on one hand, between an assignment of a claim merely for the purpose of its enforcement on a speculative basis to share the proceeds, versus an assignment for bona fide substantial consideration. Again, looking at what went on in the Bankruptcy Court, you see that what happened was there was bona fide substantial consideration. This was Bankruptcy Court approved. Fifth point is, the Bankruptcy Court specifically ruled that this is what the Crabtrees had to do, that they had to go to court, they had to get the judgment. If it was an excess verdict, then, in fact, there would be bad faith. The Crabtrees had to get an assignment. The motion to approve, specifically, assigned it to the Crabtrees or to their designee. That's all that court properties was. The Bankruptcy Order specifically stated that the Crabtrees and Cotton agree to settle their disputes, and the trustee agrees to sign the bad faith claims to Crabtree or his designee. Sixth point is that the Martin Court says that the issue of standing is best decided by Federal Rule of Civil Procedure 17. As noted in the comments for Rule 17, that came directly from Equity Rule 37. That is, the rules of equity apply. The rules of equity were not applied in the lower court's decision. What does equity do? Equity specifically says that which was intended to be done must be done. You look at substance over form, and what is the intent? Rule 17 also provides that actions have to be provided by the real party in interest. Well, that's what's being done here. It's being prosecuted by the Crabtrees, and that was the full intent as shown in the bankruptcy action. But it also provides in sections F and G that the real party in interest can be a designee. It can be a designee whose name a contract has been made for another's benefit. That's clearly what was done here. It also provides that if it is authorized by statute, it's okay. Here, the bankruptcy court specifically said that pursuant to statute, it had the right to assign these claims, and there was a bankruptcy court order approving that. So the court properties here was Crabtrees court-approved, statutory-approved designee to act for Crabtrees' benefit and was authorized pursuant to the bankruptcy statute and the order. Despite all of this, the district court specifically ruled that Crabtrees' complaint should be dismissed for lack of subject matter jurisdiction under Rule 12b-1. The Fifth Circuit specifically holds that such dismissals should be granted sparingly. In this case, it should not have been granted at all. The district court found erroneously, in my opinion, that the initial assignment to court properties from the bankruptcy trustee was illegal and void under the Mississippi Champerty Statute, a criminal statute. It relied on Smith v. Simon. Smith v. Simon is entirely irrelevant. That was a case involving a landlord-tenant dispute where the tenant specifically raised the fact that the contract, the lease, was illegal because it provided for the sale of liquor. So what would be the best Mississippi State Supreme Court case for the facts that we have before us? The Sneed case.  The district court also misinterpreted the Sneed case, Sneed v. Ford. The Sneed case held that Champerty is not a defense available to a person who is not a party to the contract. And here, clearly Allstate was not a party to the contract, although Allstate was on record and receiving all of the information with regard to the bankruptcy. They filed an appearance. If they would have sought to purchase that bad faith claim from the trustee, which the bankruptcy court and the trustee had every right to sell, they could have outbid us. They didn't do that. Second, with regard to the Sneed case, as we've talked about before, the agreement simply was not Champerty's. It didn't stir up the litigation. And in fact, in front of Judge McNeil, Allstate admitted that if this assignment had gone directly from the trustee to the Crabtrees, Champerty would never have arisen. And third, the Sneed case specifically relied on Kaplan v. Harco, a case decided when Justice Southwick was on the Mississippi Court of Appeals. And it said, look, claims for bad faith are like any other claim, and they too can be assigned. And those assignments are valid. And not only that, Mississippi has statutes that say you can assign any claims or cause of action, whether previously assignable or not. And that's . . . One of our options would be in dealing with something as ancient as maintenance in Champerty, would be to certify it back to the Mississippi Supreme Court. If we were to choose that option, what would be your suggestion of how we pose that referral? Does the Mississippi Champerty Act, the criminal statute, prevent assignments . . . and does that act, as interpreted by this Court, result in an unconstitutional statute? Because as interpreted by the U.S. District Court here, the Champerty Act interferes with the administration of the Uniform Bankruptcy Act. It impairs the obligations of the contract that was specifically approved and authorized by the bankruptcy court. And it violates the supremacy clause. And candidly, the other thing that it does that's very troubling, it says to me, an attorney who said, I can't ethically loan this money to these people because it's not a cost advance. So there had to be an outside source. And what it does, it says, I am a criminal, the Crabtrees are criminal, the trustee in bankruptcy is criminal for engaging in this conduct, and the bankruptcy court who approved it is engaging in criminal conduct. Such a statute cannot be constitutional. So, with all due respect, I would say that that is the basis by which it would be certified back, although you're much more experienced in all of your years on the bench in deciding how that should be phrased. And I would leave it to the court's discretion. That's one of the things that we requested in the alternative, was to send this ancient statute that should no longer be applied or interpreted back to the Mississippi Supreme Court. So, one other thing that the U.S. District Court did improperly was to attempt to distinguish the Sneed case by saying, well, in Sneed, the parties that were injured in the crash already had a cause of action against Ford Motor Company. Well, with all due respect, the Crabtrees also have a direct action at this time against Allstate Insurance Company. Because once they obtained a judgment in excess of the policy limits, Mississippi law says, Allstate, you bought the judgment. And the Crabtrees have a right, a constitutional right, to go in for a declaratory judgment action to collect on the excess judgment. So, we think that that was another attempt by the court to distinguish Sneed that simply doesn't hold water. Thank you. All right, you've saved time for your Bible. Thank you, Mr. Bragg. Thank you. Mr. Bragg? May it please the Court. I'm Grafton Bragg. I represent Allstate. The Crabtrees brought this suit solely as assinees of Casey Cotton. They didn't bring a direct action. They brought it solely as assinees of Casey Cotton. They didn't receive a valid assignment of Casey Cotton's rights. And so, their rights and their standing to bring this case fails. The district court was correct to examine its own jurisdiction, which here was the Crabtree standing and dismissed the case under Rule 12b-1. The reason that these assignment transactions were invalid begins and ends with the Mississippi statutes prohibiting Champerty and maintenance. These were statutes that were not, you know, the Blackstone commentaries talked about in the 1700s that Champerty was an ancient doctrine even then. But these statutes were passed by the Mississippi legislature in 1956 after the statutes that allowed assignments generally. And they were most recently amended, the prohibition language in 97-911 was amended and broadened in 2013. To clarify that the prohibition on Champerty and maintenance applied not only to companies that may be engaging in this, that if those companies were in Mississippi, but also the companies can't be out of Mississippi and engaging in a legal Champerty and maintenance to which the Mississippi statute would apply. And so, there are certainly cases that involve different types of understanding of what Champerty and maintenance means. The Fifth Circuit cases that are cited . . . Have those cases been applied outside of a usury context? In the . . . are you talking about Mississippi cases, Your Honor? The Frye v. Layton case is a usury case. And that is a case that shows that when a . . . even though the bank in Frye was not a party to the agreements where the borrower was giving and buying claims . . . Frye was a usury case, my question is . . . It was a usury case. . . . whether or not there are any Mississippi Supreme Court cases outside of the usury context. The Sneed case is a Mississippi Supreme Court case outside of the usury context that perfectly lays out . . . Sneed says you can't use Champerty as a defense? Sneed does not say that as . . . there's two buckets of cases and types of claims and both of those buckets were in the Sneed case, they were present in the Sneed case. So, if a party . . . if a plaintiff, a real party in interest who has rights because they're a victim in a tort crash, right? If they are suing the tort defendant and they go out and get an illegal side agreement, they get litigation assistance and that would be prohibited by the statute. That is a side agreement, it does not impact their rights to bring the case. So, any legal assistance is violative of the statute, not just assistance that induces a party to pursue litigation or stirs up litigation? That is correct, Your Honor. The 97-911 standard does say that it is improper to induce, but it also says it's improper for the purpose of assisting such person, being any person from the previous clause, to commence or prosecute further and it lists off any sort of litigation there is. The prohibition language applies to assistance. There is no stirring up of litigation requirement, there is no inducement requirement, and Judge Garola recognized that. He applied the Mississippi statute and said that that was a matter of Mississippi legislative intent. And so, in that situation, if you had a . . . you know, we see this all the time with a litigation finance company, like Oasis Funding or someone may contact one of my clients if I'm working on a plaintiff's case and try to get them a loan. That may not be legal, but that would be not relevant to the jurisdictional inquiry either because the plaintiff is basing their claims off of a tort suit or off of a breach of contract, not off of an assignment. Why shouldn't we certify this issue to the Mississippi Supreme Court? There's a few reasons. One, this case, the Sneed Court has already set forth the framework and the Mississippi statute as a straightforward application of the statute. They did in Sneed find that . . . they did not find a chance for disagreement in Sneed. That is correct. And Sneed made clear the whole question in that case, whether the assignment to the insurers, the insurance companies was valid, was whether the insurance companies could claim a real and legitimate interest in the underlying litigation. And because the insurance companies had an interest in seeing that liability was properly allocated, including the Ford Motor Company that was the defendant, before the assignment, they did have an interest. You could not find a situation . . . Court Properties, Inc., which is just a litigation finance company that was brought in to facilitate a settlement, had no preexisting interest, and you couldn't draw up a more quintessential example of a company that does not have an interest. And so if you apply Sneed exactly for what it is, you get the exact opposite outcome from what happened in Sneed because Court Properties, Inc. did not have a litigation, whereas the insurance companies in Sneed did. The other reason that the case shouldn't be certified in this court, it was actually a panel opinion that Judge Smith and Judge Weiner were both on, in the Jefferson v. Lead Industries case, I believe it was 1997, recognized that when the plaintiff invokes federal jurisdiction, as the plaintiff did in the case, in this case, that militates against certification to the state Supreme Court, and also in that case said, look, even if there isn't a controlling case from the Louisiana Supreme Court on the issue of market share theory under the Products Liability Act, we can just look and see what the statute says. It's a relatively straightforward application of the statute. And so the court was cognizant of not referring to the Supreme Court more often than it needed to. In this case, the Crabtrees invoked the court's federal jurisdiction. They attempted to. The issues in this case involved a straightforward application of the statute. I know the Crabtrees would like to look at other jurisdictions' laws or secondary sources, many of which under, in this situation, we would still prevail, but the court doesn't have to reach that because there's a Mississippi statute that was duly enacted. And what you have, when court properties in November 2021 bought claims for its money, or with its money, right, it did what the statute prohibits. It gave money, and it received a choice of action. Those things are both prohibited if the purpose is to assist a person to commit or prosecute further litigation. The affidavit of Martin Gibson in paragraph 6, he could not be more clear. He says, at all times, my intent was to assist the Crabtrees in receiving damages. He said that he did this solely to help the Crabtrees collect on money that they could receive to a trial before a jury. Right, and so there's no question, there's no question that Mr. Gibson, who is the sole owner and operator, manager of court properties, has made it abundantly clear that he did the thing that was prohibited, and altruistic or not, he did it for the purpose that was prohibited by the statute. So should he be criminally prosecuted for engaging in championing? If he were criminally prosecuted, that's certainly not my call. That's a matter of prosecutorial interest. But I do think that if he were, then that would be satisfied. The statute would be satisfied, and he would be prohibited from doing what he had done. Yes, Your Honor. But of course, that's a matter of prosecutorial interest and not any concern of mine as we sit here today. I was glad that Judge Douglas asked you the question about certification, and you gave quite a lengthy answer. I'm just kind of curious why you didn't put any of that in your brief. It was certainly raised in the opening brief of Mr. McCarty. Yes, Your Honor. And I apologize for the oversight. I do think that the statute clearly dictates the result here, so I don't think that certification is necessary. I think that if this Court did certify the question to the Mississippi Supreme Court, the answer would be the same. The statute that was passed in 1956, recently amended in 2013, says what it says. What properties did, what the statute says it couldn't do. And so, when it bought claims from the bankruptcy trustee in Cotton with its money for the purpose of assisting the Crabtrees, it couldn't do that. That was a void assignment. So, I know you've talked some about prior Mississippi cases, but tell us again, what is the very closest case factually and legally to this one that has been decided in Mississippi that you claim we should abide by? Because I'm not aware of one that comes very close. There are important strands in both the Frye v. Layton case and in the Sneed case. Factually, the Sneed is a bit more on point because I guess it didn't involve usury. But in the Sneed decision, the Supreme Court recognized a few important points. One, if an agreement violates the statute, it's illegal and void. It's not voidable, it's a void. Two, that what the insurance companies did in Sneed violated the prohibition language in the statute. The only issue in Sneed was whether the insurance companies qualified as a real party in interest. And there was a dispute between the majority and the dissent about whether the insurance company did. Because you had insurance companies representing defendants in a pre-suit claims process, and the majority said, look, that's enough of an interest to bring you within the exception clause of the statute. But in this case, Court Properties was not an interested party, and you could not draw up, again, a more disinterested party than a litigation finance company that only finds out about the matter when asked to bring money to the table. If you look at Mr. McCart's affidavit that he submitted, he makes clear that the way Court Properties got involved is he reached out in July of 2021 during the context of bankruptcy settlement negotiations to his friend, Mr. Glenn White, also an attorney who brought Court Properties to the table at that time. Not somebody who had a pre-existing interest. Court Properties' only articulable interest in this matter was by virtue of the champerty and maintenance. That was not allowed. And so when Court Properties later attempted to transfer its rights to the Crabtrees, this failed for two reasons. The way that I argued it at the district court is because, as a matter of basic subrogation law and common sense, Court Properties couldn't get something that it didn't have. The way Judge Girola analyzed it was that that second transaction also violated the plain language of the champerty and maintenance statutes. Both are true, and under either approach, the Crabtrees could not receive rights because their sole basis for this suit is as assinees. The fact that they don't have valid assignment implicates Article III standing. It means they don't have an injury fairly traceable to all state's conduct and they can't recover, and the district court did not have jurisdiction. If we did decide to certify the question to the Mississippi Supreme Court, do you agree with your friend on the other side as to how it should be framed? I've got a different framing for it, Your Honor. Does Mississippi law void a transaction assigning lawsuit claims to a disinterested litigation finance company when the company's sole purpose in paying for and receiving the assignment is to assist another in pursuing litigation? What are you reading from? A pre-prepared response to that question, Your Honor. In your brief? No, Your Honor, but I anticipated that if the court wanted to ask the question about what to certify, I would rather spend some time on the front end drafting it and stating it exactly as I would like the court to certify it. So I went ahead and read that. That's not from the brief. That's just a sheet of paper that I brought today. I want to address the issue of all state's ability to raise this argument. I think Judge Girola analyzed it perfectly, and what he said is, look, the plaintiffs, so there were tort plaintiffs in Sneed. There were people that were seriously injured in the accident when the Ford Bronco rolled over, and what Sneed said is that those plaintiffs, and when it was talking about it, it capitalized the word plaintiffs because it had defined the tort plaintiffs earlier in the case with a capital letter. It said those plaintiffs didn't get their rights from this assignment, right? They got their rights because they had rights against Ford Motor Company under their product liability action, and so really their agreement with the insurance company was a side agreement as to those plaintiffs, and so if you stripped away the illegal agreement, they still had tort plaintiffs. They were based on the accident. The insurance companies were also, they had been made plaintiffs. They had been brought in through substitution. By the time they got to the Mississippi Supreme Court, were also plaintiffs, and the entire discussion before you got to that last paragraph about Ford's ability to raise the defense was about whether the insurance companies had received a valid assignment, and so in Sneed, you had examples of both buckets of cases, and in this situation, the crab trees are in the insurance company bucket. They don't have direct rights. They didn't bring direct claims. They've only brought claims as assinees, and so they rely on the assignment. That's exactly what Judge Girola held, and if there were any question that that's the correct result, that gets back to the Fry versus Layton opinion. You had a borrower who had received a couple of loans from a bank and was claiming that they were usurious. He also went out and bought many other borrowers' loans or rights for $1 apiece to bring usury claims, so he went out and he said, hey, I'll give you $1 for your usury claim against this bank, and he did that on all these different agreements, and then he brought those claims, and the Mississippi Supreme Court in 1941 said he couldn't do that. He couldn't bring the claims of others, and so in that situation, was the bank a party to those side agreements or to those agreements where he agreed to pay $1 and get their claims? The bank wasn't a party to that, but it could raise that as a valid defense, and it was a valid objection in that case because it was the basis for the borrower's claims, and that's the exact situation that the Crabtrees are in in this case. The Crabtrees would also like, you know, they believe that the district court should not have addressed the statutory analysis because of the bankruptcy context from which this matter arose, and it is certainly true that the bankruptcy court did approve a settlement, but the bankruptcy court did not come up with the idea of court properties being in the mix. The trustee did not. If you look to Mr. McCart's affidavit, court properties was brought in through the Crabtrees. I believe in their brief they say that the Crabtrees solicited court properties, and so what you had, you had an agreement between the trustee, between Cotton, the Crabtrees were on that agreement, and they presented this to the bankruptcy court, and there was no objection by the creditors. The creditor who had submitted a proof of claim would be a party to the proceeding. There's no objection by any of those, and so the bankruptcy court approved the settlement because there wasn't an objection. It was unopposed, and so Judge Garola, for the very first time, considered whether there was champerty or maintenance in the assignment transaction, and there is a doctrine that this court is well aware of that says when is an order not, when can it be used to bind litigants, excuse me, in future cases, and that's the doctrine of collateral estoppel, and if that isn't met, then it can be collaterally stopped in another case, it can be collaterally attacked in another case. Allstate was not a party. We're not subject to the personal jurisdiction of the bankruptcy court. We're not asked for our position on whether there was champerty or maintenance, so collateral estoppel doesn't apply for that reason. It also doesn't apply because the issue of champerty and maintenance was neither raised, it was not raised, it was not litigated, and it was not decided by the bankruptcy judge. It was an agreement that she signed off on, and that is the purposes of those limitations in collateral estoppel doctrine are to prevent against it being used in this very context, and so Judge Garola, who considered champerty and maintenance for the first time when Allstate was a party, had been made a party under Rule 4, was allowed to examine his jurisdiction and determine that he did not have it because there were no valid assignments. I'd like to also mention the constitutionality argument that the decrepitories have raised for the first time on appeal that the champerty and maintenance statutes, when applied in this way, would unconstitutionally interfere with the bankruptcy court's jurisdiction. That argument was waived, and if it had not been waived, it should be rejected anyway. The champerty and maintenance laws here, they're a criminal and they're a property law. What they were doing is they were defining the contours of the property that went into the bankruptcy. It said, Mr. Cotton, you've got these causes of action potentially. You could sell them, but it limits the market on who you could sell them to. You could only sell them to parties that otherwise had an interest in the litigation. It defined the market, defined one of the sticks in the bundle. That's a property law. State law determines what property rights end up in the bankruptcy. We cited the United States v. Butner case, a 1979 case, that says just that. We've also cited the N. Ray Hatfield case, a Fifth Circuit case from 1974, where you actually had a tax commissioner coming in and assessing sales tax on sales from the bankruptcy, and the Fifth Circuit said, that's fine, that's a state law. It doesn't directly conflict with the bankruptcy. There's no interference with fresh start policy. Casey Cotton has a discharge, regardless of the outcome of this case, and so that's not an unconstitutional interference, even if that argument had been raised. Your Honors, the big takeaways here are that the statute directly prohibits exactly what was done. If the court applies the plain language of the statute, it can reach that result. Because the assignments violated the law, they were invalid, and because the Crabtrees based their entire case on their assignment status, their standing on the assignment status, they don't have standing, and this court should affirm. Thank you. Thank you, Mr. Bragg. Mr. McHarrick for rebuttal. Thank you. Again, two overarching principles in rebuttal. Number one, this is not a champ for disagreement, and number two, the Crabtrees are the real parties in interest, and with all due respect to counsel opposite's argument, he made the case for both of those principles. Please recall what he said about the affidavit of Mark Gibson. He said, as the affidavit correctly shows, that Mark Gibson didn't do it for court properties or for himself. He did it to benefit the Crabtrees so that they could get their compensation, not to get compensation for court properties. That is not a champ for disagreement. Also, you have to remember that court properties was specifically the Crabtrees' designee simply to pay the $10,000 and get the assignment for the Crabtrees' benefit, not for its own, and for court properties to be at risk for $10,000 depending on the outcome of the case and to only receive it back if the Crabtrees got at least $100,000 and then only 8% interest, that's not champerty. So with all due respect, counsel opposite has proved our point. It wasn't a champ for disagreement, and the Crabtrees were the real parties in interest. If we were to certify this to the Mississippi Supreme Court, are you in agreement with counsel opposite's statement of the question? Your Honor, with all due respect, at my 72 years, I don't remember exactly what he said and I didn't write it down, but my recall was simply, he was saying, well, is the champerty statute still applicable to this agreement and is it still constitutional and does it not violate the other statutes that specifically say that it shows as an action or a signable? I think part of his argument was that the constitutionality argument was not raised prior to, it wasn't raised below, so that portion of it would be waived. Do you agree with that? No, Your Honor. Because with all due respect, how could the Crabtrees anticipate that the trial court would interpret the champerty statute so as to interfere with the Bankruptcy Act and the supremacy of the bankruptcy court's assignment? And I think one thing that is really fundamental in the analysis of this case is the Crabtrees did everything the way they should to lay it all out honestly to the bankruptcy court. We have these objections. We want the bankruptcy dismissed. We want to get an excess judgment. We want to pursue it. The bankruptcy court said go ahead and get your judgment. If you get an excess judgment, there will be a bad faith case that can be pursued. They came back into court. The consideration that was paid, the $10,000 wasn't the sole consideration because the Crabtrees, in order to get the claim assigned to their designee for their benefit, had to give up. All of the objections that they had to the bankruptcy itself and to be subordinated. And the bankruptcy proceedings lays it all out that this is proper. It's not a champerty agreement. The bankruptcy court assigns these sorts of causes of action all the time. And it's not champerty because court properties, which contrary to counsel opposites representation to you, court properties is not a litigation funding group. Court properties was simply a company that went out and bought real estate at tax sales. It wasn't litigation funding. There's nothing to support his statement to that effect. So . . . Your time has expired. Thank you. Your case and both of today's cases are under submission. The court is in recess until 9 o'clock tomorrow. All rise. Thank you.